**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Ronald Miles, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:24-cv-02282 |
| v. | ) | |
| | ) | Judge: Honorable Lindsay C. Jenkins |
| Harrison Street Real Estate Capital, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Ron Miles ("Miles") asserts that his termination from Harrison Street Real Estate Capital ("Harrison Street") was because of his age or his disability. Not so. After years of encouraging Miles, his supervisors found that he still failed to provide the strategic leadership that Harrison Street requires of its Asset Management Directors. So, they ended his employment.

Miles seeks to prove that those reasons were pretexts for discrimination. The Seventh Circuit is crystal clear on what proof of pretext requires: "Pretext is defined as 'a dishonest explanation, a lie rather than an oddity or an error.'" *Vassileva v. City of Chicago*, 118 F.4th 869, 874 (7th Cir. 2024).

Miles lacks any such proof of pretext. His supervisors – Head of Asset Management Ben Mohns ("Mohns") and Managing Director David Liu ("Liu") – genuinely believed that he had failed to develop the broader leadership skills that his position as Director demanded. Miles has no evidence that Mohns and Liu lied about their reasons for terminating his employment.

As a result, Miles' Opposition Brief can only interject opinions and speculations. Neither is availing. *Yancick v. Hanna Steel Corp.,* 653 F.3d 532, 548 (7th Cir. 2011) ("If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.").

## II. LEGAL ANALYSIS

### A. Miles' Proof of Pretext Is Missing

Miles concedes that pretext is the only issue. (ECF No. 41 at 6.). But Miles' brief misapprehends what that means: "a dishonest explanation, a lie rather than an oddity or an error.'" *Vassileva*, 118 F.4th at 874.

Contrary to Miles' wishful thinking, *Vichio v. U.S. Foods, Inc.*, 88 F.4th 687, 692 (7th Cir. 2023) does not alter that standard; does not invite the factfinder to second-guess management decisions; and does not allow Miles' narrative to overreach the undisputed facts. Rather, Miles' quote from *Vichio* – taken in its full context – merely reiterates that inconsistencies in **non-opinion** evidence may prove pretext:

> For example, Zadlo asserts he learned from Hunter that Vichio was one of the lower-performing employees in the warehouse. But Hunter testified that he could not recall discussing Vichio's job performance within the first 30 days of Zadlo's arrival at US Foods. Zadlo also places great emphasis on having a bad first impression of Vichio during their first meeting because Vichio said he would quit as soon as his son signed a Major League Baseball contract. Vichio denies making this comment—he testified that the two simply talked about their families and being baseball fans.

When it comes to proving pretext, however, "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge… [I]t is not the court's concern that an employer may be wrong about its employee's performance or may be too hard on its employee. Rather, the only

question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) (affirming summary judgment in discrimination case).

Miles cannot come close to carrying that pretext burden.

**1**. Miles asserts his opinion that Harrison Street terminated his employment on the basis of "nebulous concepts" such as leadership and mentorship. (ECF No. 42 at 4.) Yet, lack of objective criteria cannot prove pretext. *Santangelo v. Crown Cork & Seal USA, Inc.*, 255 F. Supp. 3d 791, 810 (N.D. Ill. 2017) (granting summary judgment for employer who terminated employee due to failure to improve "leadership, plant communication, and accountability").

**2.** Miles points out that he had positive feedback in his Summer 2023 "360" Review. But, as he acknowledges, that reflects feedback from Miles himself and colleagues: *i.e.*, non-decisionmakers. As a result, those opinions too cannot evidence pretext. *Hua v. Arthur J. Gallagher & Co.,* No. 20 C 6921, 2023 WL 3763527, at *8–9 (N.D. Ill. June 1, 2023) ("the pretext inquiry asks whether *decisionmakers* made false or inconsistent statements" about the basis for termination) (emphasis in original; citing *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876–77 (7th Cir. 2002)).

**3**. Miles speculates that Liu may have sought to "paper the file" in his Winter 2023/2024 Review because one of the reviewers (Elliott Pessis: who was Liu's superior) might have been selected and pressured to provide negative comments. Miles' opinion is baseless and belied by his own cited evidence from Mr. Liu's testimony:

> Q.· · What did you say generally to him?
> A.· · Generally, Elliot might have asked me why I listed him as a key reviewer.· And I might have said, look, I'm looking for thoughts on team leadership because, you know, as one of the members of the team, what kind of leadership traits that particularly for the asset management team as a whole, Ron exhibited.

Q.· · And you let Elliot know that you didn't have a particularly high view of Ron's leadership skills?
A.· · I don't know if I did that.
Q.· · Is it possible that you shared that view with him?
A.· · It's possible.
Q.· · Had you ever shared that view with Elliot at any time in 2023?
A.· · You know, Elliot was part of a talent assessment in which we ranked the different members of the team.· And Ron was rated quite lowly on that, and so we would have seen that at least at that point.

(ECF No. 37 at ¶66; ECF No. 38-2 at 124-126.)

Miles' Opposition proffers this inapposite deposition testimony to force fit his case like Cinderella's stepsisters into a glass slipper that doesn't fit—*i.e.,* the far different factual record in *Vichio* where a new supervisor explicitly instructed others to look for "good examples" of Vichio's performance failings. By contrast, the testimony here demonstrates an open-ended request for "thoughts on team leadership" and includes no indication whatsoever of instructions or pressure. Miles cannot fill that gap with speculation. *Hua*, No. 20 C 6921, 2023 WL 3763527, at *9 ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact.") (quoting *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001)).

**B. Miles Offers Nothing More On Disability Discrimination**

Beyond the failure of proof on pretext, Miles has an insuperable defect in his claim of disability discrimination. Miles admitted multiple times under oath at his deposition that he had no facts to support his belief that his supervisors held his medical conditions against him:

A.· · I think my multiple medical issues were cumulatively thought of by Ben when making decisions to promote me.
Q. .· · What facts do you have to support that belief?
MS. FEIS:· Asked and answered.
BY THE WITNESS: A.· · Feelings.
BY MR. MEAD: Anything else?
A.· · No.

(ECF No. 36-3 at 52:15-53:1.)

And:

> A.· · . . . So I think all of the medical issues that I faced throughout the years, I think that was always in everybody's mind and they tied it all together with Parkinson's.
> Q.· · Do you have any facts to support that that's what occurred?
> A.· · No.

(ECF No. 36-3 at 44:8-44:15.)

Miles' Opposition opines that Mohns and Liu may have perceived his Parkinson's more negatively just prior to his termination.[1] That opinion is based on thin air; deposition testimony from Mohns and Liu confirms there is zero factual basis for this speculative opinion. Mohns testified that he did not notice any impairments at work related to Miles' Parkinsons (ECF No. 38-4 at 33-34.). Liu, too, was crystal clear on this point:

> Q.· · And before Ron told you that he wanted to have this accommodation and that his Parkinson's was progressing [in February 2023], had you noticed anything different about his physical or mental condition?
> A.· · No.
> Q.· · Had you noticed any changes in his physical or mental performance at work?
> A.· · No.
> Q.· · Did you worry that his condition would continue to worsen after he told you that his condition was progressing?
> A.· · No.
> Q.· · Did you worry that his progressing Parkinson's might have a future impact on his performance?
> A.· · No.
> Q.· · Did you notice any other changes in Ron's physical or mental condition at any time in 2023?
> A.· · No.
> Q.· · Did his condition seem to be getting worse to you?
> MR. MEAD:· Objection; asked and answered.

---

[1] Here too, Miles tries to shoehorn his claims to fit plainly inapposite case law. Miles cites *Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513 F.3d 378 (4th Cir. 2008). But, Miles can match Wilson only in age and in having Parkinson's. The similarities end there. In *Wilson*, the employer's reasons for terminating Wilson shifted: Phoenix claimed a reduction and then said the position had been eliminated, but, in truth, had only changed the name of the position and promoted an existing employee to fill it. *Id*. at 383. That is wholly absent here. Harrison Street has steadfastly explained the reasons for his termination, in precisely the same terms, since Miles' termination (which were, in turn, consistent with criticisms in his performance reviews and other internal discussions) (*See* ECF No. 35 at 5-10.)

BY THE WITNESS: A.· · No.[2]

(ECF No. 38-2 at 74-75.)

**C. Miles Offers Nothing More On Age Discrimination.**

Miles' Opposition throws in everything including the kitchen sink in its efforts to distract from the lack of any probative evidence of pretext. (*See* ECF No. 42 at 10-11.) Each of those distractions is both legally and factually baseless.

**First**, after admitting that pretext is the only inquiry, Miles diverts back to whether he was replaced by a younger individual: an element of the prima facie case and, thus, irrelevant when the inquiry turns to pretext. *Holmberg v. Baxter Healthcare Corp*., 901 F.2d 1387, 1391 (7th Cir.1990) (prima facie threshold no longer relevant once defendant has come forward with evidence of legitimate reasons for its actions) (collecting cases). Worse, Miles' assertion that a younger employee was hired ignores his admission that his job duties were absorbed by four existing employees, with that younger new hire to assist. (ECF No. 41 at ¶ 28.) There is no proof of pretext there.

**Second**, Miles answers the wrong question, which is a common fallacy. Charles W. Murdock and Barry Sullivan, "What Kahneman Means for Lawyers: Some Reflections on Thinking, Fast and Slow," 44 *Loyola Univ. (Chi) L. J.* 1377, 1379080 (2013) (". . . when we are confronted with a hard question, we instinctively reframe the question into an easier question that we can answer."). Miles offered an answer that "a member of a protected class cannot discriminate against another member of the same class." Instead, Harrison Street argued that where, as here, the

[2] Miles' suggestion that his disability was treated less favorably than Dave Waller "who worked fully remotely" but did not need to tell Liu when he was working from home is unsupported. Miles cites only deposition testimony proving the reverse: that Waller "works out of our San Francisco office . . . four days a week" (Liu Dep. 72:21-72:23; see also Liu Dep. 159:2-159:10). Plus, that bogus comparison is wholly unrelated to Miles' termination.

same decisionmaker hired Miles at age 51 and approved his termination at age 56, that is specific proof of nondiscrimination. Cases articulating that "same actor" principle—*e.g.*, *Harris v. Warrick Cmty. Sheriff's Dept*., 666 F. 3d 444 (7th Cir. 2012)—are unaffected by that separate rule cautioning against generic immunity for decisionmakers of the same class. But, with or without the "same decisionmaker," there is still no proof of pretext.

**Third**, Miles offers half-baked statistical arguments about the age make-up of various cohorts of Harrison Street employees. But the Seventh Circuit has found that statistics cannot show "whether the articulated reasons for discharging *this plaintiff* were pretextual or discriminatory." *Adreani v. First Colonial Bankshares Corp*., 154 F.3d 389, 400 (7th Cir. 1998) (emphasis original) (affirming district court's reasoning that "even if there is evidence consistent with age discrimination [as to other employees], where no evidence is introduced that age actually motivated plaintiff's termination, the issue is not one for a jury.")[3] Consistent with *Adreani*, Miles has offered no such evidence of Harrison Street's motivation other than his own opinion.

**Finally**, Miles alleges that Mohns "made comments to him that implied negative stereotyping of older people": *i.e*., encouraging him to "bring higher energy" and "be energized." (ECF No. 42 at 11.) But, as a matter of law, energy is a distinct factor from age, so such requests for more energetic performance do not "evidence an inappropriate focus on age." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc*., 986 F.3d 711, 722 (7th Cir. 2021) (no evidence of pretext where the employer sought to hire a "high energy person") (citing *Blackwell v. Cole Taylor Ban*k,

3 Beyond that, Miles' proffered numbers are undercut by (i) the absence of any expert testimony to suggest that there is a statistically significant disparity, and (ii) a sample size that is too small to sustain such an inference. *See, e.g., White v. Office of Cook Cnty. Public Defender,* 2017 WL 3493803, at *8 (N.D. Ill. Aug. 14, 2017) (rejecting statistical proof in employment discrimination case due to small sample size and lack of expert testimony to support any theory of statistical significance).

152 F.3d 666, 672 (7th Cir. 1998) ("to evaluate an individual worker or group of workers as lacking energy . . . is not to indulge in age stereotypes, and is indeed the kind of evaluative approach that the antidiscrimination laws seek to encourage").

**D. There Is No Genuine Dispute on the Material Issues of Fact**.

Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Wade v. Ramos*, 26 F.4th 440, 446 (7th Cir. 2022). In his own words, Miles' case relies on "feelings," not facts. That lack of evidence is precisely why this is a case for summary judgment.

This shortfall of facts is apparent not only in his Opposition Brief but also in Miles' Response to Harrison Street's Statement of Facts. (ECF No. 37.) There, his litany of "disputes" fall into three categories: (i) opinions; (ii) legal arguments; or (iii) facts that are assertedly immaterial. This, of course, is wholly insufficient and merely an effort to game the system under Fed. R. Civ. P. 56.

Miles' response to the section of the Statement of Facts addressing Liu's and Mohns' concerns with his performance provide a case study in that impermissible gamesmanship. At least thirteen times, facts about Miles' performance reviews and internal discussions about his performance are labelled as "disputed" or "immaterial" **because** such criticisms "were not substantiated." (ECF No. 37 at ¶ ¶33, 38, 42, 48, 49, 50, 52, 53, 57, 58, 63, 69, 72.) [4]

---

[4] Miles similarly disputes negative comments in his performance reviews as immaterial given his alleged later bounce-back; as unrepresentative of his overall performance; as having been based on inadequate investigation; or simply as not "legitimate." (ECF No. 37 at ¶ ¶32, 35, 47, 53, 60, 68, 70, 71.) But, here too, Miles is merely venturing his opinions on how he wished Harrison Street managed its employees; those opinions have no bearing on the outcome of this case. *Hua*, No. 20 C 6921, 2023 WL 3763527, at *9 ("It is well-settled that speculation may not be used to manufacture a genuine issue of fact.") (quoting *Amadio v. Ford Motor Co*., 238 F.3d 919, 927 (7th Cir. 2001)).

But, nothing needs to be substantiated, documented, or proven to Miles' satisfaction to be non-pretextual: "[t]he question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain the discharge . . . [I]t is not the court's concern that an employer may be wrong about its employee's performance or may be too hard on its employee." *O'Leary*, 657 F.3d at 635 (affirming summary judgment in discrimination case).

## III. Conclusion

For these reasons, Harrison Street is entitled to summary judgment.

Dated: May 15, 2025

By: */s/ Brian Mead*

Brian Mead (6316651)
Jean Edmonds (6126171)
**MCDERMOTT WILL & EMERY LLP**
444 West Lake Street
Chicago, IL 60606-0029
Tele: +1 312 372 2000
Fax: +1 312 984 7700

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 15, 2025, he caused the foregoing ***Defendant's Reply in Support of Summary Judgment*** to be electronically filed with the Court, a copy of which will be served on all counsel via the Court's CM/ECF System.

Dated: May 15, 2025

By: */s/ Brian Mead*

Brian Mead (6316651)
**McDermott Will & Emery LLP**
444 West Lake Street
Chicago, IL 60606-0029
Tele: +1 312 372 2000
Fax: +1 312 984 7700
bmead@mwe.com