**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Ronald Miles, *Plaintiff*, v. Harrison Street Real Estate, *Defendant*. | No. 24 CV 2282 Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Ronald Miles filed this lawsuit against his former employer Harrison Street Real Estate alleging violations of the Age Discrimination in Employment Act (ADEA) and the Americans with Disabilities Act (ADA). [Dkt. 26.] Defendant has moved for summary judgment on both counts. [Dkt. 34.] The motion is denied.

**I. Background**

Harrison Street is a Chicago based investment management firm focused on alternative real estate assets, among other things. In 2017, Harrison Street hired Miles as a Senior VP of Asset Management. He was 51 years old. [Dkt. 37, ¶ 2.][1] Ben Mohns participated in Miles's interview and served as his supervisor for several years [*Id.*, ¶ 3.] In August 2021, Miles told Mohns that he had been diagnosed with Parkinson's Disease. [*Id.*, ¶ 5.]

David Liu became Miles's supervisor in 2023. [*Id.*, ¶ 43.] The parties dispute whether this change was implemented "so that Liu could provide closer supervision [] to improve Miles' performance" or whether it was the result of an overall change in the structure of the Asset Management group. [*Id.*] In February of that year, Liu learned that Miles had been diagnosed with Parkinson's Disease. [Dkt. 44, ¶ 5.] Miles relayed that his Parkinson's was progressing, and he requested to work remotely two days per week, rather than the standard one day; the request was approved. [*Id.*, ¶ 7; Dkt. 37, ¶¶ 7–11.] Miles needed Liu's written permission for this work from home accommodation each time he did so. [Dkt. 37, ¶ 11.] Although Miles did not request it, Liu and Mohns asked if Miles wanted to move to a part-time schedule with a pay

---

[1] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

1

reduction. Miles declined. [Dkt. 44, ¶ 9.] At some point during 2023, Miles worked on a high dollar value lease renewal, but the parties dispute the overall significance of this transaction. [Dkt. 44, ¶¶ 2–3.]

Mohns and later Liu were responsible for establishing Miles's job performance objectives and for evaluating his work performance. [Dkt. 37, ¶¶ 27–28.] Performance reviews were typically issued each year in February, and Miles received several performance reviews of one kind or another between 2018 and 2023. [*Id.*, ¶ 29.] Miles's early performance reviews scored him as mostly "meets expectations", with a few categories receiving "needs improvement." [*Id.*, ¶¶ 30, 34.] Harrison Street switched to a new scoring system in 2020, and Miles received "sometimes meets expectations" in a few categories. [*Id.*, ¶¶ 37–38.] In 2021 and 2022, Miles was rated "consistently meets expectations." [*Id.*, ¶¶ 29, 39.]

In June 2023, Miles received a mid-year 360° review that described both positive feedback and "areas of opportunity." [Dkt. 37, ¶¶ 44–46.] Miles's colleagues contributed to this review, as did Liu and Miles himself. [*Id.*] Miles received an average rating of 3.8 out of 5, which was slightly higher than the average manager rating of 3.5 out of 5, and slightly higher than the overall Harrison Street employee rating of 3.7 out of 5. [Dkt. 37, ¶ 46; Dkt. 39-1 at 74.]

It is undisputed that three of Liu's other direct reports, ranging in age from 34 to 37, received overall ratings of "consistently meets expectations" from Liu for 2023. [Dkt. 44, ¶¶ 11, 13.] Like Miles, each of their evaluations noted areas for improvement from Liu, but none were placed on a performance improvement plan, and all are still employed at Harrison Street. [*Id.*, ¶¶ 14–17.]

In the fall of 2023, Mohns created a "succession plan" for the Asset Management group that identified candidates for possible promotion by age. [*Id.*, ¶ 11.] Of the sixteen candidates identified as ready for promotion within the next one to three years, eleven were in their late 20s, 30s, or early 40s. [*Id.*] Additionally, Mohns identified seventeen employees who were "top performers," but none were over age 45. [*Id.*, ¶ 12.] During a compensation committee meeting in September 2023, Mohns "flagged Miles' performance as a cause for concern" and raised performance concerns about several other employees under age 40. [Dkt. 37, ¶¶ 50–51.] Of the six who were under age 40, most were in their 20s and 30s, and none were terminated. [*Id.*] Mohns promoted at least four "sector heads" to managing director roles, all of whom were under 45 years old. [Dkt. 44, ¶ 21.] Other promotions by Mohns in 2023 and 2024 were of employees under age 45. [*Id.*, ¶ 22.]

2

In November 2023, Liu sent an email to Mohns and an HR director that recommended terminating Miles. [Dkt. 37, ¶ 53.] The next month, Liu met with Miles to discuss performance, which Miles maintains was the first time he received negative feedback from Liu. [*Id.*, ¶¶ 59–61.] Liu proposed placing Miles on a performance improvement plan, and Miles declined. [*Id.*, ¶ 62.] That same month, Harrison Street initiated 2023 performance reviews company wide, which involved soliciting not only self-evaluations and manager evaluations but also reviews from other "key reviewers." [*Id.*, ¶ 64.] Liu selected the "key reviewers" for Miles's evaluation, each of whom provided "constructive feedback" on Miles. [*Id.*, ¶¶ 64–67.]

In early January 2024, Liu and Miles met to discuss performance, and Miles mentioned his Parkinson's Disease as a reason why he was "a less-than-ideal candidate" for public speaking events. [*Id.*, ¶ 72; Dkt. 44, ¶ 10.] The parties dispute how Liu reacted to this statement. One week later, Miles was terminated by Liu, Mohns and an HR director. [Dkt. 37, ¶¶ 73–75.] Following his termination, Harrison Street hired a new Asset Management team member who was in his late 20s or early 30s. [Dkt. 44, ¶ 28.] It is undisputed that Miles's remaining job responsibilities were absorbed by four other employees under 40. [*Id.*, ¶ 29.]

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The court construes the evidence in the light most favorable to the non-moving party, giving him the benefit of all reasonable inferences. *Lesiv v. Illinois Central Railroad Co.*, 39 F.4th 903, 911 (7th Cir. 2022). Defeating summary judgment requires evidence, not mere speculation. *See Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021).

## III. Analysis

The ADEA extends protection to workers age 40 or older, 29 U.S.C. § 631(a), making it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." § 623(a)(1). *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020). Similarly, under the ADA an employer

3

discriminates when it takes an adverse action against an employee because of the employee's disability. 42 U.S.C. § 12112(a). The analyses under the ADA and ADEA are similar, which allows Miles's discrimination claims to be evaluated together. *Brooks v. Avancez*, 39 F.4th 424, 433 (7th Cir. 2022); *Clapper v. United Airlines, Inc.*, 2022 WL 14632805, at *5 (N.D. Ill. Oct. 25, 2022).

A plaintiff can rely on two frameworks to show discrimination. Under the holistic approach established in *Ortiz v. Werner*, the court looks at the evidence in the aggregate to determine whether it allows an inference of prohibited discrimination. 834 F.3d 760, 765 (7th Cir. 2016). Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, a plaintiff must first establish a prima facie case for discrimination. 411 U.S. 792, 802 (1973).

Courts may skip the *McDonnell Douglas* prima facie analysis if the employer raises the employee's performance as the reason for the adverse employment decision. *Bragg v. Munster Med. Rsch. Found. Inc.*, 58 F.4th 265, 271 (7th Cir. 2023). In such a case, issues of satisfactory performance and pretext overlap, so the court should "proceed directly to ... pretext." *Id.* (quoting *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 478 (7th Cir. 2010)). To establish that an employer's explanation for an adverse employment action is pretextual, a plaintiff does not necessarily need to show that the explanation is factually untrue. Even a true fact can be a pretext if it was not the honest reason for the employer's action. *Vichio v. US Foods, Inc.*, 88 F.4th 687, 691 (7th Cir. 2023).

Pretext can be proven, among other ways, by evidence: that the employer's explanation has no basis in fact; of "ambiguous or suggestive comments or conduct;" or of "better treatment of people similarly situated but for the protected characteristic." *Paterakos v. City of Chicago,*—— F.4th ——, 2025 WL 2314843, at *6 (7th Cir. Aug. 12, 2025) (citing *Joll v. Valparaiso Cmty. Schools*, 953 F.3d 923, 929 (7th Cir. 2020)). Ultimately, the singular question is whether the evidence in the record supports a finding that the termination was based on discrimination. Regardless of the evidentiary approach used, the touchstone on summary judgment is always whether the plaintiff has introduced evidence that would allow a reasonable factfinder to conclude that the proscribed factor caused the discharge. *Igasaki v. Illinois Dept. of Fin. and Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (citing *Ortiz*, 834 F.3d at 766 ("all evidence belongs in a single pile and must be evaluated as a whole."))

Harrison Street maintains that Miles was terminated "based on an honest business judgment that he did not fit the firm's needs," arguing that his weaknesses as a leader were well documented. [Dkt. 35 at 11–12.] Specifically, it cites to feedback Miles received in 2018, 2019, 2020 and 2022, which it says was "echoed in peer reviews from Miles' colleagues." [*Id.* at 12, 14–15.] It also highlights areas for improvement described in Miles's 2023 mid-year review. [Dkt. 37, ¶ 46.]

Miles disagrees, countering the negative feedback with examples of positive praise. For instance, in 2022, Mohns said that Miles "responded well to criticism" and "made a big shift from sometimes meets expectations to consistently meets expectations this past year", and his 2023 peer review praised qualities such as a willingness to "include others on projects and help mentor them," and "step up and take charge where needed and to work to hold people accountable." [Dkt. 37, ¶¶ 29, 46, Dkt. 36-3 at 193–94.] He notes that Mohns rated Miles as "consistently meets expectations" in 2021 and 2022, and that in 2023, shortly before his termination, his overall rating was higher than both the average manager rating and the overall average rating for Harrison Street employees. [Dkt. 42 at 5, 8.]

Miles's past positive performance reviews alone cannot suffice to show discrimination. *Galvan v. Indiana*, 117 F.4th 935, 940 (7th Cir. 2024). As the Seventh Circuit has explained, it is "not enough to merely show that in the past, his former supervisor evaluated his performance positively. [Miles] would need to demonstrate that the employer did not genuinely believe its later evaluations that perceived the performance as inadequate." *Id.*

Similarly, Miles's argument that pretext can be inferred because the record is "devoid of any *undisputed* examples of performance failures sufficient to motivate a termination," also fails. [Dkt. 42 at 12 (emphasis added).] A plaintiff cannot survive summary judgment merely by raising a dispute as to the accuracy of the reasoning behind an adverse employment action. *See Brooks*, 39 F.4th at 436 ("arguing about the accuracy of the employer's assessment is a distraction.") (quoting *Jones v. Union Pac. R.R. Co.*, 302 F.3d 735, 744 (7th Cir. 2002)). There must be evidence from which a jury could conclude that the employer acted with an illegal discriminatory motive. *Id.* ("Because courts are not super-personnel departments who sit in judgment of management decisions, it is of no moment if the employer's reasoning is incorrect, 'foolish, trivial or even baseless.'") (quoting *Gordon v. United Airlines, Inc.* 246 F.3d 878, 879 (7th Cir. 2001)). In short, the question is not whether Miles performed his job well, or whether Harrison Street was correct in determining that his termination

was warranted. "The focus is not on the wisdom of the decision, but on its genuineness." *Galvan*, 117 F.4th at 939.

To establish that its' motives were not genuine, Miles argues that pretext can be circumstantially inferred from the fact that Liu immediately replaced Miles "with a much younger, non-disabled employee" "who did not have stronger leadership skills or industry standing." [Dkt. 42 at 12.] "Replacement by a similarly situated, younger employee certainly can . . . serve as probative evidence of age discrimination." *Draghiciu v. Reid Hospital & Health Care Services, Inc.*, 2025 WL 1615330, at *7 (S.D. Ind. June 6, 2025) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 321–22 (7th Cir. 2003)). In *Vichio*, for example, the Seventh Circuit recently held that there was sufficient evidence to support an inference of pretext for age discrimination because, among other reasons, the plaintiff's record had been "virtually pristine" until the arrival of a new supervisor, and the supervisor "looked for and hired a younger employee to replace Vichio." 88 F.4th at 692–93.[2]

Though not enough *on its own* to save his discrimination claims, the court agrees that Miles has come forth with sufficient additional evidence from which a finder of fact might conclude that his termination was pretextual. In addition to his arguments about his replacement, Miles points to evidence of younger, non-disabled Asset Management employees whose "performance shortcomings" were documented but "overlooked" either because they were not terminated or offered a performance improvement plan in response to Liu identifying areas for improvement. [Dkt. 37, ¶ 51; Dkt. 42 at 13.] It is undisputed that three of Liu's direct reports whose ages ranged from 34 to 37 received overall ratings of "consistently meets expectations" from Liu for 2023, which was the same rating Miles received in 2021 and 2022. Like Miles, Liu included constructive feedback in their evaluations, but none were placed on a PIP and all are still employed by Harrison Street. [Dkt. 44, ¶¶ 13–17.] Likewise, Mohns identified employees in the Asset Management group in September 2023 with "performance concerns," most of whom were in their 20s and 30s. [Dkt. 37, ¶ 51.] As Miles observes, it is undisputed that he was the only identified employee over 45 and

---

[2] In its reply, Harrison Street argues that whether Miles was "replaced by a younger individual" is only relevant as "an element of the prima facie case and, thus, irrelevant when the inquiry turns to pretext." [Dkt. 43 at 6 (citing *Holmberg v. Baxter Healthcare Corp.*, 901 F.2d 1387, 1391 (7th Cir.1990)).] The court disagrees. *Ortiz*, 834 F.3d at 766 ("all evidence belongs in a single pile and must be evaluated as a whole."); *Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) ("In order to defeat summary judgment, the plaintiff one way or the other must present evidence showing ... that a rational jury could conclude that the employer took that adverse action on account of her protected class, not for any non-invidious reason.")

the only employee on the list who was terminated. [*Id.*] "One way to show pretext and thus discrimination can be an employer's failure to take comparable action against other employees for similar poor performance..." *Paterakos*, 2025 WL 2314843, at *5. Similarly, it is undisputed that (a) Mohns's "succession plan" for the Asset Management group identified sixteen candidates for promotion by age, with at least eleven employees who were in their late 20s or 30s, and the oldest of whom was 43; and (b) Mohns's list of seventeen "top performers" included no employees over age 45. [Dkt. 44, ¶¶ 11–12.]

The "determinative question in discrimination cases is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age or disability] ... caused the discharge.'" *Igasaki*, 988 F.3d at 958. Drawing inferences in Miles's favor, as the court must at this stage, a jury could reasonably conclude that the firing was pretextual. Miles was 56 years old in 2023, "the oldest member of the team by at least a decade," and the only one in the Asset Management group who was terminated or offered a performance improvement plan in response to performance concerns. [Dkt. 42 at 12–13.] And while it is true that a jury might find the fact that Miles's duties were absorbed by four existing employees as an indication that the decision to terminate him was free from discriminatory animus, it might also conclude that hiring a new team member in his late 20s or early 30s, in light of the other evidence, suggests a preference toward building a "younger" Asset Management team.

Harrison Street counters that Miles was hired by Mohns at age 51, and that as of 2023, Mohns and Liu were 45 and 44 when Miles was 56. [Dkt. 37, ¶¶ 2, 48, 78.] It would be illogical, it argues, for Mohns to hire Miles at age 51 and then approve his termination just a few years later. [Dkt. 35 at 13 (*Harris v. Warrick Cmty. Sheriff's Dept.*, 666 F. 3d 444, 449 (7th Cir. 2012) (observing the "same-actor" theory—"that is, the theory that because the same person [] both hired and fired the plaintiff, it is unlikely that he had a discriminatory motive.")] Ultimately, the hiring/firing dynamic is "just something for the trier of fact to consider." *Blasdel v. Nw. Univ.*, 687 F.3d 813, 820 (7th Cir. 2012). This is especially true considering Mohns was not the only person involved in the decision to terminate Miles. Nor was Miles's Parkinson's diagnosis known to Mohns when Miles was hired. Mohns did not learn of it until 2021, and Liu until 2023.

This dovetails with Miles's disability discrimination arguments, which he characterizes as "closely tied" to his age discrimination claim in that perception of him suddenly changed to an "ailing older employee." [Dkt. 42 at 16.] Miles argues that his termination came soon after he disclosed that his condition was worsening.

7

[*Id.*] Harrison Street points out that Miles continued to work with accommodations for close to two years after disclosing his diagnosis in 2021, and that his termination in 2024 came many months after Miles announced that his condition was worsening, undermining any inference of discrimination based on timing. [Dkt. 35 at 12–13.]

It is undisputed that at the January 4 meeting that preceded Miles's firing, he told Liu that his Parkinson's symptoms "made him a less-than-ideal candidate" to speak at public speaking events. [Dkt. 44, ¶ 10.] The parties hotly dispute Liu's reaction to this information as well as what Miles said to Liu in response, a credibility dispute that simply is not resolvable at the summary judgment stage.[3] It is axiomatic that at summary judgment, district courts may not weigh conflicting evidence, decide which inferences to draw from the facts, or make credibility determinations, tasks that are the "province of the jury." *Whitaker v. Dempsey*, 144 F.4th 908, 917, (7th Cir. 2025) (citing *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." (cleaned up)).

Whatever was said, Miles was terminated one week later. A fact finder might conclude that the termination, which followed reasonably closely on the heels of Miles's statements about his condition's impact on speaking events, supports an inference of causation. Though "suspicious timing alone rarely establishes causation," *see Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015), the discussion above explains why Miles has demonstrated more than just odd timing.

Because genuine disputes about pretext remain for a jury to decide, summary judgment is not appropriate.

## IV.   Conclusion

Harrison Street's motion for summary judgment is denied.

Enter: 24-cv-2282
Date: August 27, 2025

Lindsay C. Jenkins

---

[3]   Harrison Street objects to some portions of this conversation on hearsay grounds. [Dkt. 44, ¶ 10.] That objection is overruled. Setting aside that statements of a party opponent are not hearsay, Fed. R. Evid. 801(d)(2)(D), the statements are not offered for their truth, but rather for the alleged impact or effect on those who received this information. *See United States v. Cruse*, 805 F.3d 795, 810 (7th Cir. 2015).